# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: February 04, 2026

Mr. Andrew L. Edge
Martenson, Hasbrouck & Simon
2573 Apple Valley Road, N.E.
Suite 200
Brookhaven, GA 30319

Mr. Carl Ray Edwards
Edwards & Jennings
3031 W. Grand Boulevard
Suite 435
48202
Detroit, MI 48202

Mr. Donald Jeffrey Hutchinson
Lewis & Munday
220 W. Congress Street
Suite 500
Detroit, MI 48226

Ms. Alice B. Jennings
Edwards & Jennings
3031 W. Grand Boulevard
Suite 435
48202
Detroit, MI 48202

Ms. Danielle B. Safran
The Sigler Law Firm
30300 Northwestern Highway
Suite 337
Farmington Hills, MI 48334

Mr. Brendan F. Sullivan
Martenson Hasbrouck & Simon
2573 Apple Valley Road, N.E.
Atlanta, GA 30319

Mr. Matthew D. Treco
Martenson Hasbrouck & Simon
2573 Apple Valley Road, N.E.
Atlanta, GA 30319

Ms. Ronda Tate Truvillion
Lewis & Munday
220 W. Congress Street
Suite 500
Detroit, MI 48226

> Re: Case Nos. 25-1349/25-1351, *Barnes, et al v. G4S Secure Solutions (USA) Inc., et al*
> Originating Case No. 2:23-cv-12897

Dear Counsel,

   The Court issued the enclosed opinion today in these cases.

   Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                   Sincerely yours,

                                   s/Cathryn Lovely
                                   Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0071n.06

Case Nos. 25-1349/1351

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 04, 2026
KELLY L. STEPHENS, Clerk

| | ) | |
|---|---|---|
| ROBERT BARNES, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| G4S SECURE SOLUTIONS (USA) INC., et al., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

READLER, Circuit Judge. Robert Barnes worked security at the Renaissance Center in Detroit for over three decades. Following his termination, he and his former colleagues filed a class action lawsuit over alleged racial discrimination they faced on the job. Defendants moved to compel arbitration. The district court denied that request based on an exclusion clause in the arbitration agreement. Seeing no error in that decision, we affirm.

I.

Built by the Ford Motor Company and completed in 1981, the Renaissance Center has become a cultural icon synonymous with Detroit. *See* Dan Austin, *Renaissance Center*, Historic Detroit, https://historicdetroit.org/buildings/renaissance-center [https://perma.cc/83TA-SBG4] (last visited Jan. 2, 2026). The 5.5 million-square-foot Center is comprised of seven interconnected glass towers adjacent to the Detroit River. Over the years, the Center has been home to restaurants,

shops, hotels, banks, theaters, and foreign consulates, to say nothing of the world's largest auto companies. *Id.* The Center's ambitious design has led many to describe it as a "city within a city." *Id.*

Like most any property of its size, the Renaissance Center has security officers patrolling its footprint. Robert Barnes was one of those officers. Beginning as a part-time employee in 1992, Barnes eventually worked his way up to Shift Supervisor and Senior Use of Force Instructor for the property's private security team. Throughout his tenure, however, Barnes alleges that he and other black employees faced persistent racial discrimination. According to Barnes, white security officers not only directed offensive conduct toward their black coworkers, but also engaged in racial profiling and excessive use of force against black visitors. Barnes's attempts to report these issues fell on deaf ears. Eventually, Barnes says, the stress of this environment brought on medical conditions that forced him to take time off. Following a medical leave, Barnes was discharged from his employment in early 2025.

Those events prompted Barnes to file this class action lawsuit in federal district court. Barnes's complaint alleged racial discrimination, hostile work environment, failure to promote, and retaliatory termination theories, in violation of a host of federal and state statutes. Barnes named as defendants a dozen former coworkers as well as G4S Secure Solutions (Barnes's employer and the Renaissance Center's security contractor), Renaissance Center Management Company, Allied Universal (who acquired G4S in 2021), and General Motors (the Renaissance Center's current owner).

Barnes immediately faced pushback regarding his choice of forum. During his employment, Barnes had signed an arbitration agreement covering "all claims or causes of action" he may have against Allied, its employees, its clients, its clients' employees, or any related

2

companies. Invoking that agreement, defendants moved to compel arbitration. Barnes responded by amending his complaint, adding three former colleagues as co-plaintiffs. Defendants, in turn, again moved to compel arbitration, this time with respect to both Barnes and his co-plaintiff, Maurice Duck.

The district court denied the motion. *Barnes v. G4S Secure Sols. (USA) Inc.*, No. 23-cv-12897, 2025 WL 769970, at *26 (E.D. Mich. Mar. 11, 2025). The court acknowledged that Barnes and Duck had assented to a valid and binding arbitration agreement and that their claims fell within the agreement's general scope. *Id.* at *10–21. But, the court emphasized, the agreement also contained a clause that excluded all "claims involving an employee who is covered by a collective bargaining agreement at the time the dispute arises or is filed." *Id.* at *21 (quoting R.22-3, PageID 1001). Because Duck was a lower-level security officer and a union member, the district court held that he fell within that exclusion. *Id.* As for Barnes, because he held a supervisory role, no collective bargaining agreement applied to him. *Id.* Nevertheless, the court reasoned, Barnes's claims "involve," in the plain sense of the word, allegations of improper conduct committed by lower-level, unionized employees. *Id.* Accordingly, the court explained, Barnes's claims fell outside the arbitration agreement's scope. *Id.* Defendants filed this interlocutory appeal to challenge that latter ruling. *See* 9 U.S.C. § 16(c).

## II.

For purposes of this appeal, the parties have narrowed their differences. No party disputes that Barnes entered into a valid arbitration agreement. Nor do they dispute that the agreement, which applies to "all claims or causes of action" raised by Barnes, encompasses Barnes's lawsuit as an initial matter. R.22-3, PageID 999. The point of contention is whether the agreement's

3

Nos. 25-1349/1351, *Barnes v. G4S Secure Solutions (USA) Inc., et al.*

exclusion clause, entitled "Claims Not Covered by this Agreement," removes Barnes's claims from the agreement's reach. *Id.*, PageID 1001.

By the clause's terms, the agreement "does not apply to claims involving an employee who is covered by a collective bargaining agreement at the time the dispute arises or is filed." *Id.* Defendants contend that the district court erred in holding that Barnes's claims "involv[e]" employees who were covered by a collective bargaining agreement, thereby exempting him from arbitration. *Id.* We review the denial of a motion to compel arbitration de novo. *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021).

Start with the ground rules for interpreting contractual language in this setting. Although the Federal Arbitration Act imparts certain background principles, including "the federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), "we apply general state-law [contract] principles . . . to the interpretation of an arbitration agreement," *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 601 (6th Cir. 2016) (citation modified). Which state's contract law applies here? As Barnes is a Michigan resident who assented to the arbitration agreement as part of his employment in Michigan, all agree that Michigan law guides our interpretation of the contract. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995).

In the Wolverine State, absent any ambiguity, "contractual interpretation begins and ends with the actual words of a written agreement." *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 870 (Mich. 2016) (citation modified). We thus assign contractual language "its plain and ordinary meaning," which serves "to give effect to the parties' intention at the time they entered into the contract." *Id.* (quoting *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 102 (Mich. 2014)). Defined terms are given their specified meanings. *Cavalier Mfg. Co. v. Emps. Ins.*

4

*of Wausau*, 564 N.W.2d 68, 70 (Mich. Ct. App. 1997). For those words left undefined in the contract, dictionary definitions often help discern their meanings. *McGrath v. Allstate Ins. Co.*, 802 N.W.2d 619, 622 (Mich. Ct. App. 2010) (citing *Citizens Ins. Co. v. Pro-Seal Serv. Grp., Inc.*, 730 N.W.2d 682, 687 (Mich. 2007)).

With this framework in mind, turn to the question of whether Barnes's causes of action are "claims involving" an employee subject to a collective bargaining agreement. R.22-3, PageID 1001. A "claim" is Barnes's "demand for . . . a legal remedy" to which he "asserts a right." *Claim*, *Black's Law Dictionary* (11th ed. 2019). As for "involving," it seemingly has more than one plausible definition. In this context, "involving" could mean merely "relat[ing] to or affect[ing]" a union employee. *Involve*, American Heritage Dictionary (5th ed. 2022) (last visited Jan. 2, 2026); *see also Involve*, Oxford English Dictionary Online (last visited Jan. 2, 2026) ("[t]o include," "to contain," or "to be concerned or associated with"); *Involve*, Merriam-Webster's Collegiate Dictionary Online (last visited Jan. 2, 2026) ("to have within or as part of itself" or "to relate closely"). More restrictively, it could mean "ha[ving]" a union employee "as a necessary feature or consequence" of the claim. *Involve*, American Heritage Dictionary, *supra*; *see also Involve*, Oxford English Dictionary Online, *supra* ("to include as a necessary . . . circumstance"); *Involve*, Merriam-Webster's Collegiate Dictionary Online, *supra* ("to require as a necessary accompaniment"); *United States v. Graham*, 275 F.3d 490, 516 (6th Cir. 2001) (defining "involved" as used in the Sentencing Guidelines to mean "included"). Fortunately, we need not choose between the two. As shown below, Barnes's claims involve employees subject to a collective bargaining agreement, either as *a* part or as a *necessary* part.

To see why, look to Barnes's operative complaint, which sets forth the nature of his "claim[s]." Fed. R. Civ. P. 8(a). According to the complaint, Barnes worked as a shift supervisor

5

Nos. 25-1349/1351, *Barnes v. G4S Secure Solutions (USA) Inc., et al.*

at the Renaissance Center, a supervisory role in which all agree Barnes was not subject to a collective bargaining agreement. But the complaint also refers to the "security officers" under Barnes's watch. R.69, PageID 2192. At the hearing on defendants' motion to compel, Barnes advised the district court that these lower-level employees would have been covered by a collective bargaining agreement when the dispute arose, and Barnes's subsequently amended complaint alleges as much. Defendants, we note, have not contested that characterization. *See Barnes*, 2025 WL 769970, at *21.

On this record, we agree with the district court that the unionized security officers are "involved" in Barnes's claims. Throughout the complaint, Barnes asserts that he personally experienced numerous "incidents of race discrimination at the Renaissance Center committed by . . . Caucasian security officers," employees covered by a collective bargaining agreement. R.69, PageID 2196–97. Further, Barnes purportedly fielded complaints from black security officers (also union members) concerning other discriminatory behavior by their white counterparts (themselves members of a union). These incidents, all of which involved union employees, form the basis of Barnes's discrimination and hostile work environment claims. Much the same is true for Barnes's whistleblower and retaliation claims, which arise from his reporting of these alleged incidents to management. Similarly, Barnes's failure to promote claim stems from instances of union employees receiving promotions over him based on Barnes's race and history of reporting discrimination. In other words, Barnes's "claims" necessarily flow from—and thus "involv[e]"— employees "covered by a collective bargaining agreement at the time" this "dispute ar[ose]." R.22-3, PageID 1001.

Defendants, for their part, largely recognize that Barnes prevails under the plain meanings employed here and by the district court. Yet they ask that we eschew dictionary definitions in

6

Nos. 25-1349/1351, *Barnes v. G4S Secure Solutions (USA) Inc., et al.*

favor of an interpretation that "claims involving" union employees refer only to claims brought *by* union employees. And because Barnes was not covered by a collective bargaining agreement, it follows, the exclusion does not apply to his claims.

One could imagine a more tailored agreement that excluded from arbitration only those claims *asserted* by members of a union, which Barnes is not. But the agreement here is not so confined. The agreement, including the exclusion clause, only captures disputes brought by Barnes, not those brought by other employees. *See id.*, PageID 998–99 ("all claims . . . the Employee may have"). So, under defendants' view, the exclusion at issue does not apply unless Barnes himself is a union member. That conclusion, however, does not add up when one accounts for the dueling ways in which the agreement defines an "employee." On the one hand, the agreement defines the capitalized term "the Employee" to mean Barnes himself. R.22-3, PageID 998 ("You are referred to herein as the 'Employee.'"). Yet on the other, it uses the generic term "an employee," which fairly encompasses a broader range of individuals, in reference to the collective bargaining agreement-related exclusion clause. *See id.*, PageID 1001 ("[T]his Agreement does not apply to claims involving an employee who is covered by a collective bargaining agreement at the time the dispute arises or is filed."). Had the parties meant to exclude only claims in which Barnes was covered by a collective bargaining agreement, the exclusion would have used "the Employee" rather than "an employee." That the agreement uses "the Employee" in the same section for several other exclusions further confirms that this exclusion, by using "an employee," sweeps broadly by design. *See Glob. Prods., Inc. v. Mayser Polymer USA, Inc.*, No. 339451, 2019 WL 637284, at *4 (Mich. Ct. App. Feb. 14, 2019) (distinguishing capitalized from uncapitalized terms and giving the latter plain meaning).

Nos. 25-1349/1351, *Barnes v. G4S Secure Solutions (USA) Inc., et al.*

Defendants' remaining arguments similarly fall short. Defendants believe that the presumption in favor of arbitrability pushes their interpretation of the agreement over the finish line, notwithstanding its flaws. Relatedly, they call attention to the agreement's sweeping scope, which captures "all claims or causes of action that [Barnes] may have." R.22-3, PageID 999. As defendants see it, to construe the exclusion provision as we do here conflicts with the agreement's presumptively broad coverage.

True, federal policy compels us to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Equally true, "broad arbitration clauses" like the one here are "particularly subject to the presumption in favor of arbitrability." *Teamsters Loc. Union No. 89 v. Kroger Co.*, 617 F.3d 899, 905 (6th Cir. 2010) (citation modified). But that presumption, as weighty as it may be, does not short circuit ordinary principles of contract interpretation. *See Russell v. Citigroup, Inc.*, 748 F.3d 677, 681 (6th Cir. 2014) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). And where there are no doubts to resolve in the first place, such as when "an express provision exclud[es] a specific dispute," the presumption has no room to operate. *Id.* (citation modified). That remains true even for a "broad arbitration clause." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005). Because the exclusion provision's unambiguous language places this suit outside the agreement's scope, any presumption favoring arbitrability is beside the point.

Next, defendants suggest that Barnes's reading of the agreement leads to absurd results. According to defendants, if "involving" were assigned its ordinary meaning, a dispute becomes non-arbitrable merely when a "union member . . . is questioned about a claim as a potential witness[] but is determined not to have any relevant information." Appellant Br. 20. Or, defendants theorize, Barnes could evade the arbitration agreement by "confiding" the facts of his

8

Nos. 25-1349/1351, *Barnes v. G4S Secure Solutions (USA) Inc., et al.*

claim in a union member "on the eve of the lawsuit's filing." *Id.* at 21 n.5. It follows, they say, that giving the exclusion language such breadth would render the arbitration agreement illusory. *Id.* at 21–22. But defendants proceed from a false premise. In these examples, unlike Barnes's actual claims, the hypothetical employees played no role—let alone a necessary one—in Barnes's claims for relief. Nor does our reading make the contract illusory. As Barnes points out, his arbitration agreement still covers any number of claims involving his employer, management, or fellow shift supervisors, for example.

Lastly, defendants accuse the district court of finding the exclusion clause ambiguous and failing to deploy the presumption favoring arbitrability. That assessment is difficult to square with the district court's express conclusion that "the language is neither ambiguous nor contradictory." *See Barnes*, 2025 WL 769970, at *21. In any event, conducting de novo review, *see Ciccio*, 2 F.4th at 582, we conclude that the arbitration agreement's plain and unambiguous terms exclude Barnes's claims from arbitration.

\* \* \* \* \*

We affirm.

9

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 25-1349/1351

ROBERT BARNES,

    Plaintiff - Appellee,

v.

G4S SECURE SOLUTIONS (USA) INC., GENERAL MOTORS, LLC, fka General Motors Company, RENAISSANCE CENTER MANAGEMENT COMPANY, and UNIVERSAL PROTECTION SERVICE, LLC, aka Allied Universal Security Services (25-1349); GREGORY JENKINS, MICHAEL BALDWIN, JR., LARRY PAYNE, CHAD GRUETMAN, MICHAEL MOUILLESEAUX, MATTHEW WILEY, MATTHEW ZANI, CRAIG HACKETT, LAWERENCE CHILDS, DOUGLAS BAYER, and RENE LACELLE (25-1351),

    Defendants - Appellants.

**FILED**
Feb 04, 2026
KELLY L. STEPHENS, Clerk

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

ENTERED BY ORDER OF THE COURT

*Kelly L. Stephens*

Kelly L. Stephens, Clerk