UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BARNES, et al.,

      Plaintiffs,

v.

G4S SECURE SOLUTIONS (USA) INC., et al.,

      Defendants.

Case No. 23-cv-12897

Honorable Robert J. White

**OPINION AND ORDER (1) GRANTING INDIVIDUAL DEFENDANTS' FIRST MOTION TO ADOPT AND JOIN, (2) DENYING CORPORATE DEFENDANTS' MOTION TO DISMISS/FOR A MORE DEFINITE STATEMENT, AND (3) DENYING THE REMAINING MOTIONS AS MOOT**

Plaintiffs filed this class-action lawsuit alleging racial discrimination and related claims connected to their prior employment as security personnel at the Renaissance Center in Detroit, Michigan; Defendants include G4S Secure Solutions (USA) Inc. (G4S), Renaissance Center Management Company (RCM), General Motors, LLC (GM), and Allied Universal Security Services (Allied) (collectively, Corporate Defendants), as well as Gregory Jenkins, Michael Baldwin, Jr., Larry Payne, Chad Greutman, Michael Mouilleseaux, Matthew Wiley, Matthew Zani,

Craig Hackett, Lawrence Childs, Douglas Bayer, and Rene Lacelle (collectively, Individual Defendants).[1] (ECF No. 15, PageID.692-771).

As relevant here, the Court previously denied Defendants' request to compel arbitration with respect to Plaintiffs Robert Barnes and Maurice Duck, Sr. (ECF No. 55).[2] Defendants appealed this decision to the Sixth Circuit, challenging the denial with respect to Barnes only. (*See* ECF Nos. 64, 66). Plaintiffs then filed a second amended complaint on April 24, 2025. (ECF No. 69).

Before the Court are Corporate Defendants' motions (1) to stay all proceedings pending appeal (ECF No. 70) and (2) to dismiss the second amended complaint or, alternatively, to require that Plaintiffs submit a more definite statement of their claims (ECF No. 72). Individual Defendants also move to adopt and join Corporate Defendants' motions. (ECF Nos. 73-74). The Parties fully briefed Corporate Defendants' motions; Plaintiffs only responded to Individual Defendants' first motion to adopt and join, however (the one specific to Corporate Defendants' motion to dismiss/for a more definite statement). The Court will decide the various motions without oral argument pursuant to Local Rule 7.1(f)(2).

---

[1] Defendant Daniel Rebar is in default for failing to defend in this action. (*See* ECF Nos. 54, 71).
[2] Defendants never disputed that the other two named plaintiffs in this case, Derrick Toliver and Michael Young, Jr., can pursue their claim before this Court.

For the following reasons, the Court grants the Individual Defendants' first motion to adopt and join (the one specific to Corporate Defendants' motion to dismiss/for a more definite statement) and denies Corporate Defendants' motion to dismiss/for a more definite statement.  Further, because the Sixth Circuit recently resolved Defendants' appeal and affirmed the Court's denial of arbitration (*See* ECF No. 86), Corporate Defendants' motion to stay and Individual Defendants' associated motion to adopt and join are both denied as moot.

## I.     Background

Plaintiffs are black, former employees of Corporate Defendants[3] who worked in security at the Renaissance Center. (*See* ECF No. 69, PageID.2176-77, 2181-82, 2190-91).  Individual Defendants were all at relevant times similarly employed security personnel except Jenkins, an executive for GM, and Payne, Corporate Defendants' Security Director from 2017 to 2021.  Individual Defendants Gruetman,

---

[3] The second amended complaint asserts that Corporate Defendants "are and/or were at all relevant times herein[] joint employers for Plaintiffs and similarly situated individuals working at [the Renaissance Center] from 2019 to present." (ECF No. 69, PageID.2182).  Plaintiffs allege that "GM directly hired, contracted and/or retained Defendant RCM[], of which GM is a partial owner, and/or Allied and G4S to handle and/or administer all 'security' through [the Renaissance Center] under a PA330 Security Police Agency license provided to RCM[] by the State of Michigan." (ECF No. 69, PageID.2181).  The record otherwise indicates that GM and RCM initially contracted G4S to coordinate security services at the Renaissance Center, and Allied acquired G4S in 2021. (ECF No. 22-4, PageID.1033).  RCM was dissolved in 2024, but Allied continued to employ Renaissance Center security personnel until January 2025, when its contract ended or was terminated. (ECF No. 31-2, PageID.1455-56).

Mouilleseaux, Rebar, Wiley, Hackett, Zani, Childs, Bayer, and Lacelle are all white; Baldwin is black. (ECF No. 69, PageID.2182-86).  The remaining relevant facts of this case are discussed in the Court's substantive analysis of Corporate Defendants' motions.

## II.    Analysis

### A. Motion to Adopt and Join Regarding Dismissal/More Definite Statement

Responding to Individual Defendants' first motion to adopt and join, Plaintiffs (1) argue that Individual Defendants failed to seek concurrence before filing the motion and (2) seek a denial of Individual Defendants' requested relief. (ECF No. 77).  Plaintiffs met and conferred with Corporate Defendants' regarding concurrence with their motion to dismiss/for a more definite statement, however, so doing the same with Individual Defendants would likely have been duplicative and futile, particularly where all Defendants are arguing in lockstep and no prejudice resulted. *See Livonia Pub. Schs. v. Selective Ins. Co.*, 443 F. Supp. 3d 815, 861 (E.D. Mich. 2018); *Jarvis v. Cooper*, No. 12-11804, 2013 U.S. Dist. LEXIS 44717, at *30 (E.D. Mich. Mar. 28, 2013); *Tuttle v. Land*, No. 10-11221, 2010 U.S. Dist. LEXIS 52057, at *8-11 (E.D. Mich. May 27, 2010).

Next, the Court agrees with Individual Defendants that the arguments in Corporate Defendants' motion are transferable to them.  Specifically, Corporate Defendants arguments for dismissal/a more definite statement—that the second

4

amended complaint violates notice pleading requirements because (1) most of Plaintiffs' counts are impermissible shotgun pleadings and (2) Plaintiffs' vague and ambiguous allegations lack the requisite specificity (ECF No. 72, PageID.2395-2405)—are generally applicable to all Defendants.  For these reasons, the Court grants Individual Defendants' first motion to adopt and join.[4]

### B. Motion to Dismiss/For a More Definite Statement

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) ("In analyzing a 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true.") (cleaned up).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply

---

[4] The Court rejects Plaintiffs' request to sanction Individual Defendants for failing to seek concurrence and/or essentially filing a frivolous motion only to delay these proceedings.  Regardless of merit, none of the arguments at issue are frivolous.  And seeking concurrence was arguably unnecessary and futile since Corporate Defendants had already done so.

calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.  "But a pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action.'" *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Next, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). The federal rules provide that "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e).  "Whether to grant a motion for a more definite statement is within the discretion of the trial court." *Goodlow v. Porter*, No. 23-12992, 2024 U.S. Dist. LEXIS 92698, at *4 (E.D. Mich. Mar. 1, 2024).

6

"Federal courts generally disfavor motions for more definite statements." *Diakite v. Yellen*, No. 23-10470, 2024 U.S. Dist. LEXIS 27855, at *12 (E.D. Mich. Feb. 16, 2024).  "In view of the notice pleading standards of Rule 8(a)(2) and the opportunity for extensive pretrial discovery, courts rarely grant such motions." *Id.* at *12-13; *see also Compuware Corp. v. IBM*, 259 F. Supp. 2d 597, 600 (E.D. Mich. Jul. 25, 2002) ("Polishing the pleadings by means of motion practice is rarely worth the effort," and "[a]ny evidentiary detail a defendant may require is more properly the subject of discovery.") (cleaned up)

"A motion under Rule 12(e) should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Diakite*, 2024 U.S. Dist. LEXIS 27855 at *13 (cleaned up).  "If the complaint meets the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, the motion should be denied." *Id.*

Fed. R. Civ. P. 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555.  And Fed. R. Civ. P. 8(d)(1) states that "[e]ach allegation must be simple, concise, and direct."

In moving to dismiss or for a more definite statement, Corporate Defendants argue that the second amended complaint violates notice pleading requirements

because (1) most of Plaintiffs' counts are impermissible shotgun pleadings and (2) Plaintiffs' vague and ambiguous allegations lack the requisite specificity regarding which defendant(s) engaged in the allegedly improper conduct, when such conduct occurred, and which plaintiff(s) was or were harmed by the conduct. (ECF No. 72, PageID.2395-2405).

Count I of Plaintiffs' second amended complaint asserts hostile work environment claims against all Defendants under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), 42 U.S.C. § 1983, and 42 U.S.C. § 1981. (ECF No. 69, PageID.2216-90).   Count II asserts claims against Corporate Defendants and Individual Defendants Jenkins, Payne, Baldwin, Greutman, and Mouilleseax for a pattern and practice of systemic race discrimination under the ELCRA and 42 U.S.C. § 1981. (ECF No. 69, PageID.2290-98).   Count III asserts related race discrimination claims against all Defendants under 42 U.S.C. § 1983.[5] (ECF No. 69, PageID.2298-304).

Count IV asserts claims for failure to promote against Corporate Defendants and Individual Defendants Payne, Baldwin, and Jenkins under the ELCRA, 42

---

[5] This count seemingly alleges that Defendants are liable for their/their agents' discriminatory conduct under § 1983 because they acted under P.A. 330, which provides for the license and regulation of private security guards in Michigan. *See Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020) ("Only claims against 'state actors' are eligible for relief under [§ 1983]. . . . To determine whether a private entity qualifies as a state actor, we ask whether its conduct is fairly attributable to the State.") (cleaned up).

U.S.C. § 1983, and 42 U.S.C. § 1981. (ECF No. 69, PageID.2304-19).  Count V asserts claims against Corporate Defendants and Individual Defendants Jenkins, Payne, Baldwin, Greutman, and Mouilleseax for retaliation under the ELCRA, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. (ECF No. 69, PageID.2320-51).  Lastly, Count VI that Corporate Defendants and Individual Defendants Baldwin and Jenkins violated Michigan's Whistleblowers' Protection Act (WPA). (ECF No. 69, PageID.2351-57).

### 1.    Shotgun Pleading

Corporate Defendants argue that Plaintiffs' Counts I, II, IV, and V are impermissible shotgun pleadings because they involve and essentially conflate multiple claims and theories arising under different state and federal laws. *See Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020) (the plaintiff's "fail[ure] to separate each of her causes of action or claims for relief into separate counts" is the "type of 'shotgun pleading' [that] violates Rule 10(b).").  They elaborate, specific to Count I, that Plaintiffs' allegations are so long, convoluted, and entwined that it is impossible to identify "which allegations pertain to which claim or relate to alleged violations under which statute." (ECF No. 72, PageID.2397).  The Court disagrees.

As an initial matter, Fed. R. Civ. P. 8(d)(2) states:

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Accordingly, Plaintiffs are permitted to assert various legal theories of liability under each count of their complaint, even if inconsistent. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

The Court relatedly finds nothing improper with Plaintiffs asserting under certain counts claims under both the ELCRA and § 1981, particularly where the elements and evidentiary requirements of such claims are substantively the same. *See Ferrer v. Detroit Club Mgmt. Corp.*, No. 22-11427, 2025 U.S. Dist. LEXIS 166857, at *19 (E.D. Mich. Aug. 27, 2025) ("Claims brought under [the ELCRA, § 1981, and Title VII] are analyzed under the same evidentiary framework."); *Sharp v. Williams Prods.*, No. 22-11247, 2024 U.S. Dist. LEXIS 50490, at *11-12 (E.D. Mich. Mar. 21, 2024) (applying same elements to address hostile work environment claim under § 1981 and the ELCRA); *Moralez v. McDonalds*, No. 20-13023, 2023 U.S. Dist. LEXIS 114167, at *5 (E.D. Mich. Feb. 8, 2023) ("The elements for retaliation under § 1981, Title VII, and the ELCRA are the same."). And to the extent Plaintiffs also cite § 1983 in Counts I, IV, and V, such claims appear appropriately connected to holding Defendants liable as state actors for their alleged violations of § 1981. *See Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020) ("Section 1983 provides a remedy against any person acting under color

10

of state law for 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."); *see also supra* footnote 7.

The Court therefore concludes that Plaintiffs' second amended complaint, construed in a light most favorable to them, provides Defendants sufficient notice of the claims against them, at least with respect to the various legal authorities underlying each count of the complaint. Although Corporate Defendants argue it is impossible to determine which facts relate to the various authorities under each count, this concern is moot given how the authorities are related. Specifically, § 1981 and ELCRA claims both require essentially the same factual basis, so the totality of allegations under each count at issue applies to both authorities. And Plaintiffs' related § 1983 claims, apart from Count III's apparent purpose to establish Defendants' status as state actors, likewise rely on the same conduct allegedly violative of § 1981 (and the ELCRA). In sum, despite the multiple authorities cited within some of Plaintiffs' individual counts, it is sufficiently clear to the Court how these authorities relate (1) amongst each other and (2) to the factual allegations at issue.

Furthermore, with respect to Fed. R. Civ. P. 8(d)(1), each of Plaintiffs' individual allegations are sufficiently simple, concise, and direct as contemplated by the rule, even if the totality of allegations is unduly long and/or difficult to follow. The Court acknowledges, however, that the rules require a short and plain statement

of asserted claims, and that Plaintiffs' second amended complaint spans almost 200 pages. Indeed, Plaintiffs' Count I asserting claims for hostile work environment includes roughly 75 pages of supporting allegations. But the length is at least plausibly necessary given the unique nature of this case, specifically given the number of different plaintiffs and defendants at issue, as well as the years-long timeline over which the alleged discrimination occurred.

With this background in mind, Corporate Defendants cited cases to support that Plaintiffs engaged in improper shotgun pleading are unavailing. First, in *Lee*, the Sixth Circuit held that the plaintiff's "fail[ure] to separate each of her causes of action or claims for relief into separate counts" was the "type of 'shotgun pleading' [that] violates Rule 10(b)." *Lee*, 951 F.3d at 393; *see also* Fed. R. Civ. P. 10(b) (" If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ."). But unlike in this case, the plaintiff in *Lee* asserted seven distinct state claims within a single sentence, all while also failing to connect specific facts to her various causes of action. Plaintiffs here, in contrast, assert separate counts with respect to a hostile work environment, a pattern and practice of discrimination, the failure to promote, and so on, with each count including specific supporting allegations common or related to the predominant count. Therefore, to the extent Plaintiffs' individual counts incorporate various legal theories/authorities based on the same or similar conduct, this is proper

(1) for the reasons stated earlier and (2) because separating these factually-interrelated claims would not promote clarity.[6]

Next, in *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833 (6th Cir. 2024), the Sixth Circuit affirmed the district court's decision "that the allegations of discrete acts of discrimination could not be characterized as part of the hostile work environment claim." *Id.* at 840.  In doing so, the Court reasoned as follows:

> Under Title VII, a plaintiff may bring a claim alleging that either (1) an employer engaged in discrete discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire; or (2) the employer's repeated conduct created a hostile work environment. Because the two claims are different in kind, we have consistently held that allegations of discrete acts may be alleged as separate claims, and as such cannot properly be characterized as part of a continuing hostile work environment.

*Id.* (cleaned up).

Corporate Defendants, relying on *Ogbonna-McGruder*, argue that Plaintiffs' Count I includes various allegations of discrete discrimination that make it impossible to identify the basis/nature of their claims.  The Court disagrees. Specifically, Count I can be fairly read to assert hostile work environment claims under three primary theories: (1) based on white security officers' racially-charged jokes, slurs, and related conduct; (2) based on white security officers' discriminatory

---

[6] Corporate Defendants' related concern—that Plaintiffs' improperly group themselves and all Defendants together within each count and within specific allegations such as to impair fair notice of the claims at issue—is addressed later in this opinion. *See infra* Section II.B.2.

treatment of and constitutional violations against black visitors to the Renaissance Center; and (3) based on supervisors' and managers' repeated failure to address and/or tacit endorsement of officers' discriminatory conduct. Importantly, all Plaintiffs' theories essentially and appropriately relate to repeated conduct allegedly creating a hostile work environment, rather than distinct acts of discrimination like retaliation. Indeed, though some facts of Plaintiffs' various counts may overlap, Plaintiffs explicitly plead claims of discrete discrimination under separate counts specific to the type of discrimination at issue (e.g., failure to promote and retaliation).

Further, to the extent the section of Plaintiffs' second amended complaint concerning the treatment of black visitors includes allegations specific to Defendants' hiring practices and retaliation against those who reported discrimination, it is plausible to infer that the repeated hiring and promotion of white employees with a history of racially-motivated constitutional violations contributed to the hostile environment alleged. That said, Corporate Defendants are generally correct that any specific racially-motivated retaliation or promotion of a white employee instead of a Plaintiff in this case is a discrete act of discrimination that cannot be characterized as part of a continuing hostile work environment, per *Ogbonna-McGruder*. Nevertheless, these allegations do not render Count I unintelligible such that a more definite statement is warranted, nor do they require

14

dismissal of the hostile work environment claims based on the appropriate theories identified above.

Lastly, in *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024), the Court stated that "[a] 'shotgun pleading' is one that makes it virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief." *Id.* at 640 (cleaned up). "Shotgun pleadings often seek to overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for the defendants to make informed responses to the plaintiff's allegations." *Id.* (cleaned up). But the *K.O.* Court, while acknowledging that the plaintiff asserted many general allegations lumping the various defendants together, declined to dismiss the complaint as an impermissible shotgun pleading:

> Courts presented with similar arguments about shotgun pleading have generally declined to dismiss the complaint on that basis alone. *See S.Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1078 (M.D. Fla. 2021) (citing *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The failure to specify a particular defendant is not fatal, however, when '[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.'")); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1075 (D. Colo. 2021) ("And because all of the plaintiff's claims have essentially the same factual underpinning, the Court is not persuaded that this is a case where incorporating prior allegations into each claim makes the claim unintelligible."). The court agrees that the inclusion of these broad allegations, when combined with other more specific facts about each location, does not alone merit the dismissal of this case. Fed. R. Civ. P. 8(a)(2). However, in turning to the arguments about the viability of K.O.'s [specific] claims, the court will pay special attention to the specific allegations raised about . . . each of the individual Defendant

> hotels to determine whether they are sufficient to "give the defendant
> fair notice" of the claims against them.

*Id.* at 641 (citations omitted).

Here, where Plaintiffs assert separate counts concerning those claims with sufficiently distinct underlying facts and supporting authority (e.g., retaliation versus creation of a hostile work environment), the Court declines to dismiss the second amended complaint as an improper shotgun pleading. Plaintiffs' allegations are surely detailed and at times redundant, but they do not constitute an unclear mass that prevents Defendants from connecting the factual allegations to the specific legal claims asserted. Similarly, Plaintiffs' citation of multiple authorities within certain counts does not render the second amended complaint so excessively vague and ambiguous as to be unintelligible. But as stated in footnote 6 and like in *K.O.*, the Court will address concerns regarding Plaintiffs' generalized allegations to decide whether Plaintiffs provide adequate notice to each Defendant.

### 2.     Specificity/Sufficiency of Allegations

As stated, Corporate Defendants argue that the second amended complaint violates notice pleading requirements in part because Plaintiffs' vague and ambiguous allegations lack the requisite specificity regarding which defendant(s) engaged in the allegedly improper conduct, when such conduct occurred, and which plaintiff(s) was or were harmed by the conduct. The Court disagrees.

First, with respect to when specific allegations occurred, this is the type of evidentiary detail that is more properly the subject of discovery.  Indeed, Plaintiffs' do allege approximate and estimated timelines concerning much of the alleged discrimination.  For example, they assert that Plaintiffs were subjected to a pervasive hostile work environment from 2017 onward, and that certain security officers complained to management about the alleged discrimination beginning in 2019. (ECF No. 69, PageID.2190-91).  Plaintiffs also identify specific, approximate dates between 2019 and 2022 for when various racial jokes and other discriminatory conduct occurred. (ECF No. 69, PageID.2219-30).  Likewise, though many of the facts regarding the failure to promote are generally alleged to occur "during Plaintiffs' employment," Plaintiffs do identify specific dates of certain conduct, presumably where available without the benefit of discovery, such as efforts in September 2021 to keep Barnes and other black security officers from applying for a promotion. (ECF No. 69, PageID.2304-19).  And Plaintiffs specify that the alleged retaliation occurred from 2020 to the present, with more specific dates included to state when certain Plaintiffs reported issues to management and were later disciplined, terminated, or otherwise retaliated against. (*See* ECF No. 69, PageID.2322-50).

The Court therefore concludes that any uncertainty or ambiguity regarding when specific conduct at issue occurred can be clarified in discovery, and such gaps

17

do not render the complaint unintelligible to warrant a more definite statement. Relatedly, because Plaintiffs need only assert "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]," *Twombly*, 550 U.S. at 556, such gaps do not warrant dismissal either.

How certain allegations relate to each Plaintiff also can be clarified in discovery. Admittedly, many individual allegations lack application to any Plaintiff or otherwise generally refer to black or similarly-situated security officers rather than a specific Plaintiff. But fairly reading the allegations as a whole and applying all reasonable inferences in Plaintiffs' favor, this lack of specificity does not warrant dismissal or a more definite statement.

Specifically, Plaintiffs essentially claim that all named and similarly-situated Plaintiffs were subject to similar forms of discrimination, so it is appropriate that various allegations relate generally to black security officers instead of any specific plaintiff(s), particularly without the benefit of discovery. With Count I in particular, the generalized allegations can be fairly read as supporting a pervasively hostile environment experienced by all black security officers at the Renaissance Center. Concerning Counts IV and V, the second amended complaint includes various facts specifying each named Plaintiff's involvement with respect to retaliation and the failure to promote that sufficiently clarify Plaintiffs' more general assertions. And the complaint, in addition to stating specific facts related to certain plaintiffs under

18

each count, critically includes almost 15 pages summarizing each named Plaintiffs' employment history with Corporate Defendants, as well as the various ways each Plaintiff was allegedly discriminated against in this case.

Relatedly, Count II can be fairly read as deriving from the other various discrimination claims, but with the specific, additional intent to hold Corporate Defendants' and their managerial employees liable for a pattern and practice of *intentional* discrimination.[7] Further, many of the generalized allegations that Corporate Defendants take issue with are either (1) introductory or summarizing paragraphs that distill the essence of a particular claim or count, (2) paragraphs that essentially imply all similarly-situated plaintiffs were exposed to conduct similar to certain specific incidents identified, (3) background facts (like Corporate Defendants being legally responsible for its employees' actions), or (4) facts related to Corporate Defendants' and their managers' general, discriminatory policies and practices.

Given the foregoing, the general allegations concerning the plaintiff(s) harmed under each count are not improperly vague when the complaint is read as a whole, particularly with the extensive factual support provided specific to each named Plaintiff. And concerning dismissal, the Court again concludes that Plaintiffs

---

[7] Corporate Defendants do not contest the specificity of allegations with respect to the plaintiff(s) harmed under Counts III and VI.

provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

Lastly, Corporate Defendants are correct that a plaintiff generally fails to meet the notice pleading requirements of Rule 8 when generally lumping multiple defendants together. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (explaining that a pleading referring to all defendants generally and categorically is insufficient to allege each individual's personal involvement and, therefore, liability); *id.* at 596 ("simply lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct fails to satisfy the minimum standard that a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests") (cleaned up). Nevertheless, construing the second amended complaint in Plaintiffs' favor, the Court concludes that they sufficiently allege facts to provide each Defendant notice of the claims at issue.

As an initial matter, with respect to Corporate Defendants, the second amended complaint can be fairly read to hold them liable via respondeat superior for the allegedly illegal conduct of its various employees named individually in this case, or else for failing to remedy their employees' discriminatory conduct. And with respect to this latter theory, Plaintiffs specifically allege that each individual Corporate Defendant was notified of but failed to correct their employees'

20

discriminatory actions.  Plaintiffs also critically allege that Corporate Defendants jointly employed their security personnel.  Given these circumstances, it makes sense that Corporate Defendants are largely lumped together throughout the complaint, and that various allegations generally relate to Corporate Defendants' derivative liability (or Defendants' collective liability) without identifying any single individual actor. *See S.Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1078 (M.D. Fla. 2021) ("The failure to specify a particular defendant is not fatal, however, when '[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.'") (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

Further, to the extent many of Plaintiffs' allegations fail to identify the particular individual actor(s) involved, these are sufficiently clarified by more specific allegations elsewhere in the complaint.  For example, one paragraph of the second amended complaint Corporate Defendants take issue with for failing to specify who engaged in the alleged conduct, ¶ 94, states that "Corporate Defendants, Upper Management, and Individual Defendant Officers created a severe, continuing[,] and pervasive race hostile work environment . . . ." (ECF No. 69, PageID.2198).  But this and similar allegations must be read together with Plaintiffs' more specific allegations elsewhere in the complaint that clearly, if not concisely, show how each Individual Defendant acted, and how such actions relate to Plaintiffs'

21

various claims and theories asserted. *See Finley v. Huss*, 723 F. App'x 294, 297 (6th Cir. 2018) (explaining that at the motion to dismiss stage, "we accept the plaintiff's allegations as true, draw all reasonable inferences in favor of the plaintiff, and construe the *entire complaint* in the light most favorable to the plaintiff") (emphasis added); *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 543 (6th Cir. 2015) ("The court's function is to construe a complaint in order to do justice, Fed. R. Civ. P. 8(e), and in doing so it must look to the complaint as a whole to see if it provides sufficient notice of the claim.") (cleaned up).

Concerning the various Individual Defendants, Plaintiffs allege the following: (1) all Individual Defendants except Baldwin generally engaged in discrimination against black security officers and black visitors at the Renaissance Center; (2) Corporate Defendants' white security officers, including all named Defendant officers, continually made racially demeaning remarks during Plaintiffs' employment; (3) Corporate Defendants' white security officers, including but not limited to Defendants Zani, Rebar, Childs, Wiley, Hackett, Bayer, and Lacelle, routinely violated black visitors' constitutional rights; (4) Defendant Jenkins failed to properly supervise security officers and investigate complaints of racial discrimination and bias; (5) Defendant Payne did the same, in addition to retaliating against officers who engaged in protected activity; (6) Defendants Jenkins, Payne, and Baldwin all failed to properly investigate complaints of discrimination—thereby

22

condoning officers' improper conduct—and/or condoned retaliation against those who filed complaints to management; (7) Defendants Jenkins, Payne, Baldwin, Mouilleseaux, and Greutman all condoned the unconstitutional conduct against black visitors to the Renaissance Center; (8) Corporate Defendants' managerial employees, including but not limited to Jenkins, Payne, and Baldwin, failed to appropriately discipline officers for their discriminatory conduct; and (9) the actions of all Individual Defendants' contributed to a hostile work environment.

Plaintiffs also include the following additional, specific allegations pertaining to the various Individual Defendants by name: (1) Zani, Bayer, and Greutman were overheard using racial slurs and conspiring how to get rid of black employees; (2) Bayer made other disparaging, racially-charged comments about Plaintiff Young, and he repeatedly made racially discriminatory jokes, slurs, and comments in the workplace; (3) Greutman repeatedly laughed at and otherwise condoned racially-offensive jokes by other white officers; (4) Lacelle made various racially charged remarks to coworkers; (5) Bayer often monitored black employees and guests based on his racial bias; (6) Wiley engaged in racial intimidation against a black employee; (7) Rebar, Bayer, and Zani at one point ridiculed a coworker for working closely with black employees; (8) Rebar referred to a black coworker with a racial slur at least once and would refuse directives from his black supervisors; (9) Mouilleseaux

23

facilitated the improper and racially-motivated monitoring of black employees, as well as the falsification of incident reports.

Plaintiffs allege further that (1) Payne, Jenkins, and Baldwin empowered security officers to use whatever force necessary to remove black civilians from the Renaissance Center regardless of their constitutional rights; (2) Plaintiff Barnes reviewed footage showing Rebar, Wiley, Zani, Hackett, Childs, Greutman, Bayer, and Lacelle violating black visitors' constitutional rights; (3) Rebar, Wiley, Zani, Hackett, Childs, Greutman, Bayer, Mouilleseaux, and Lacelle intentionally provoked black men to illicit a response, often resulting in wrongful detention or other constitutional violations, and they repeatedly detained, searched, and/or arrested black civilians based solely on race; (4) Zani, Childs, Mouilleseaux, and Hackett all used excessive force against black visitors; (5) Rebar, Greutman, and Mouilleseaux wrongfully arrested a black man who committed no crime;[8] (6) Payne, Jenkins, and Baldwin condoned officers' unconstitutional behavior by failing to conduct thorough use-of-force reviews; (7) Payne, Jenkins, Greutman, Mouilleseaux, Baldwin, Bayer and Childs permitted white employees to violate black visitors' rights without repercussion; (8) Payne, Jenkins, Greutman,

---

[8] This list is not exhaustive of the facts pertaining to officers' alleged constitutional violations against black visitors to the Renaissance Center.  In fact, Plaintiffs include numerous other specific incidents of such discrimination involving various Individual Defendants identified by name.

24

Mouilleseaux, Baldwin, Bayer, Childs, and Zani permitted white employees to falsify incident reports without repercussion.

Finally, Plaintiffs allege that (1) Payne, Jenkins, Baldwin, Mouilleseaux, and Greutman all ignored repeated complaints of racial discrimination, thereby condoning and creating a hostile work environment; (2) Payne, Baldwin, and Jenkins hired security officers with knowledge that they were previously terminated for violating individuals' constitutional rights; (3) rather than provide appropriate discipline, Payne, Baldwin, and Jenkins decided to (a) promote offending, white security officers, (b) promote various white officers over Plaintiffs and other black employees with more seniority and/or experience, and (c) retaliate by firing employees who complained about discrimination; (4) Payne, Baldwin, and Jenkins were all involved in promoting less qualified candidates on the basis of race, and they employed intentional strategies to minimize black applicants' ability to apply for promotions; (5) Jenkins, Payne, Baldwin, Greutman and Mouilleseaux subjected those making complaints of discrimination to adverse employment actions, including retaliatory discharge, demotions, discipline, and harassment.

Given these detailed, specific allegations pertaining to each Individual Defendant by name, Plaintiffs go well beyond labels and conclusions or a mere formulaic recitation of the elements of their claims, and they certainly provide enough facts to raise a reasonable expectation that discovery will reveal evidence of

25

illegal conduct. And while it may be difficult to parse out each Defendant's specific involvement with respect to certain claims and theories asserted, particularly considering the length and at times redundance of the second amended complaint, the complaint is not so excessively vague and ambiguous as to be unintelligible and as to prejudice Defendants seriously in attempting to answer it. Specifically, because motions for a more definite statement are disfavored and rarely granted, the Court concludes that any remaining ambiguity concerning how each particular Defendant acted illegally in this case can be appropriately clarified through discovery.

Lastly, the Court has reviewed and acknowledges Plaintiffs' recent filing indicating a desire to file for leave to amend their complaint to address Corporate Defendants' concerns. (*See* ECF No. 85). If Plaintiffs still wish to amend their complaint following this decision, they may file a motion for leave to amend on or before February 20, 2026.

* * *

For the reasons given, the Court ORDERS that Individual Defendants' first motion to adopt and join (ECF Nos. 73) is GRANTED.

IT IS FURTHER ORDERED that Corporate Defendants' motion to dismiss or for a more definite statement (ECF No. 72) is DENIED.

IT IS FURTHER ORDERED that Corporate Defendants' motion to stay (ECF No. 70) and Individual Defendants' second motion to adopt and join (ECF No. 74) are DENIED as moot.

IT IS FURTHER ORDERED that Plaintiffs have until February 20, 2026, to file any motion for leave to amend their complaint a third time.

Dated: February 9, 2026               s/Robert J. White
                                      Robert J. White
                                      United States District Judge

27